V1.6-8

**Faith Lynn Brashear**
Plaintiff /Witness/ Advocate
In RE: 1095 Lowry Ranch Road
Corona, CA 92881
Tel: 951-268-4042
Preferred Response: Fax: 855-204-0859
Faith@Betterquest.com  Mail Response:

FILED
2016 APR -6 PM 4:04
CLERK US DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ___

# FEDERAL COURT OF CALIFORNIA
## FOR THE LOS ANGELES, CENTRAL DISTRICT

FAITH LYNN BRASHEAR, an individual, Plaintiff
vs.
THE MORTGAGE LAW FIRM, PLC, as Trustee and Agent of a Beneficiary; as agent for Wells Fargo Bank, N.A.; DARREN J. DEVLIN, President of of The Mortgage Law Firm, PLC; SPECIALIZED LOAN SERVICING LLC, as servicer for HSBC Bank USA, National Association, as Trustee for the Holders of the Deutsche Alt-A Securities, Inc., Mortgage loan Trust, Mortgage Pass-Through Certificates Series 2007 –OA4; MARK MCCLOSKEY Assistant Vice President of Specialized Loan Servicing LLC, and All persons and entities claiming any right to real property located at 1095 Lowry Ranch Road Corona, California 92881 and Does 1-10, inclusively,
Defendants

CASE No. CV16-2360 GW (GJSx)

**EXHIBIT F –** Certified Fraud Examiner Professional Witness

[signature]
4-6-16

**JURY TRIAL DEMANDED DEBTOR COMPLAINT PURSUANT TO 42 U.S.C. Sec 1983**   1

FALSE CLAIMS 31 U.S. Code § 3729 (a) (C), violations of US Constitutional Amendments, 5th, 8th 9th and 14th. Adversary Trial for Summary Judgment, Declaratory and Injunctive relief.



1/29/16

MAHER SOLIMAN / Expert Witness A former CFO and later Chief Operating Officer for Mortgage Guarantee. Career highlights include over $1 billion in non-agency closed whole loan transactions, accounting background for secondary and capital markets trading and sales to institutional buyers; other experience includes warehouse lending bulk loan sales and acquisitions, flow and wholesale, sub- servicing and over 15 years of banking and investment banking experience.

Over five years on staff with law firms in Los Angeles. Have held CFL and CA Brokers licenses, member in good standing with Association of Certified Fraud Examiners ACFE; Graduated CSUN 1985 Accounting / management.

Born Santa Monica and now residing in Los Angeles; over 40 Cases testified include Graupner v Select Portfolio Services Wells Fargo Bank N.A., CA Court of Appeals 2010; Ordered Remand... back to trial Court.

FOR MORE INFO Tel 213-239-4661



ASSOCIATION OF CERTIFIED FRAUD EXAMINERS
2015 MEMBER ACFE IN GOOD STANDING

Tuesday, February 23, 2016

**Faith Lynn Brashear**
1095 Lowry Ranch Road
Corona, California 92881
Tel: 951-268-4042
Fax: 855-204-0859

Plaintiff/Creditor

Dear Faith;

RE: AN EXCHANGE OF LIKE-KIND PROPERTY. SEE LIKE-KIND EXCHANGES IN PUBLICATION 544 and us code sec 61 (a) (1) 180 (I) AND FOR ADVANCE TAX PAYER FORM INFO ON 1099 A 1099 C.

Recall I am an accounting professional and active member of the ACFE who specialty is comprehensive analysis pre foreclosures in matters involving like-kind exchanges. My general ledger analysis will aid your tax professional regardless of what happens in your case.

As you know there are a myriad concerns and questions the opposition must respond to in advance of sale that are valid issues of fact remain. With no question the essence of a mortgage and proper characterization of the contract draw attention to an affirmed exchange of property under section 1.1031 for purporting same kind of property as is the most common type of nontaxable exchange. To qualify as a like-kind exchange, your client must hold for business or investment purposes both the property you transfer and the property you receive. There must also be an exchange of like-kind property. See Like-Kind Exchanges in Publication 544.

To date nothing in your notices or correspondence has eluded or even mentioned the tax issues triggered by the seller who the agents represent. You're a grantor and conveyed to title to SELLER at origination and such transfer basis in asset is deferred to date from the transfer of title into trust to trustee and conversion of title to interests of which constitute the alleged purpose for recovery. If this case and your claim, follow the same course of action in every case I have reviewed in California to date then attorneys are representing abandoned title that is held in a lawyers trust account for counsel as trustee. The issue here is that any purchase consideration used for book entry purposes at sale assumes the consideration will consist of credit or cash at closing, some of which will be used by Seller to pay off existing

Page **1** of **8**

debt of the business that will not be assumed by Buyer (e.g., bank loans); Assumption of specified liabilities (e.g., trade payables); Specified deferred payments, or cash in escrow, to secure Seller's performance of representations, warranties, and covenants under the sale contract; deferred payments or escrow of approximately 10% of the total cash consideration paid at closing, and such consideration will be paid out of escrow more than SIX MONTHS AFTER CLOSING. Herein the party you hold as Seller is entitled to receive any earnings on the escrowed funds; Equity of Buyer representing a 20% interest and these incudes any and all Employment agreements with Seller's owners and key management including all contract warranties and Covenants.

The purchase agreement provides for a post-closing purchase price adjustment to account for differences between actual closing working capital and estimated closing working capital. The purchase agreement also provides for customary indemnification provisions whereby the parties indemnify each other against damages suffered due to breaches in representations, WARRANTIES, and other similar matters.

What we believe to be the case here is that title is granted and conveyed by the Borrower at origination Borrower is not one in the same with the BORROWER and called for in the transfer contract "CA DEED OF TRUST under an alleged warranty deed where the BORROWER WARRENTS all Borrower covenants with lender. In this regard the household is facing a deferred tax liability on the earlier transfer of title. In this regard the contract does stipulate the Borrower grants and conveyed title free of lines and all encumbrances for which the granting of title at origination is conditioned only to the existing liens of record. This is complex litigation I agree especially where I have received and reviewed the borrower HUD I and she in fact PAID TO THE DEMAND ISSUER the amount held the existing liens of record.

So are these agents foreclosing on the current lien for title transferred and that consideration converted to equity or are your effort to recover the amount of the existing liens paid by the household at settlement? Note the DEED OR CONTRACT [see FHLMC CA DEED OF TRUST] I have reviewed is a WARRENTY DEED as was executed for purposes of transferring title in advance of a scheduled default whereas it makes use of all CAPITALIZED TERMS in the contract that your office is attempting to enforce. For example, BORROWER WARRENTS and UNFORM WARRENTIES. The first has no period to mark it as a *Covenant header* while the later does in fact show a period under UNFORM WARRENTIES.

I believe the IRS and the American Bar Association as well as countless scholarly or authoritative views have been published over the last five years that site among other things the following: The year 2015 was the third year in which a tax imposed on individuals, estates, and trusts was effective. Enacted in 2010, a 3.8% tax is imposed on the net investment income of these taxpayers in excess of specified threshold amounts. Although the tax is not imposed on C corporations, S corporations, or entities classified as partnerships for federal tax purposes, the tax could apply to dividends from C corporations and to certain income from flow-through entities that is allocated to taxpayer's subject to the tax. The concerns address the problematic issues where the court can assume that the asset in question is owned by the business to be acquired as owned by a closely held company (Seller) organized as limited liability company (LLC) or now owned primarily by individuals (Owners).



ASSOCIATION OF CERTIFIED FRAUD EXAMINERS
2015 MEMBER ACFE IN GOOD STANDING

Therefore, the party your opposition represents as the Seller is classified as a partnership for federal income tax purposes. Furthermore, the essential requirements to divulge the party's interests is answered with the Employer Identification Number for their client - If this recovery prevails then the court is asked to condition the foreclosure by having your office acknowledge the beneficiary your alleging to represent is in fact the party issuing the 1099 A and or 1099 C tax payer forms.

You will recall according to the service the Employer Identification Numbers are issued for the purpose of tax administration and are not intended for participation in any other activities (e.g., tax lien auction or sales, lotteries, etc.) The Services Employer Tax Responsibilities Are Explained (Publications 15, 15-A and 15B). Please also note that Publication 15 provides information on employer tax responsibilities related to domestic and offshore taxable wages, employment tax withholding and which tax returns must be filed. More complex issues are discussed in Publication 15-A and tax treatment of many employee benefits can be found in Publication 15. The Service recommend your client thoroughly review these publications from IRS.gov. Copies can be requested online (search "Forms and Publications)

If they are representing the real party of interest then they are to issue tax payer form 1099 C, so here we are entitled to the EIN, for accurate estimate of the attribution of income and amount owed to date in advance of the sale. If they are unwilling to reveal the parties of interest, then who's benefit is it they bring the sale. The sale requires the GRANTEE to pay to TRUSTEE, your client, the amount set forth in ARMS LENGTH TRANSACTION. Then the prevailing party is unknown and thereof is who your client will grant and convey title. In this event there is no cause to issue a 1099 C. If the sale is in fact not arm's length than you and your client have knowledge of the party who prevails prior to sale. Therefore, a 1099 C can be issued for Cancellation of debt and involuntary conversion of income under Sec 61 (a) (1). So for this purpose we want to know the EIN of your client as the party issuing the 1099 C who is entitled to charge off the amount held in default that is required for issuing the tax payer form.

By identifying the party and EIN in advance of sale the lawyers are being immensely helpful and obviously relinquishing any right or claims to a 453 Qualified Sale meaning your client will carry the entire tax liability for the anticipated transfer of title at sale. Said sale scheduled for Friday February 28th 2016 is indeed intended to qualify under Section 453 as a 451 transfer and sale is no doubt brought by your office for a government actor and thus qualifies the household for a sate condemnation hearing

These questions and concerns of COD Income under section 61 (a) (1) are paired to Section 108 (i) which in part addresses the requirements for the 36-month test period. When if at all did you satisfy the 36-month test period that is essential for garnered ad qualified sale as an abandonment. From what period of time to what period ending on month 36 did your office verify NO CONTACT or CORRESPONDANCE what so ever with the household and occupants your seeking to remove from the premises? If you cannot identify the 36 month

rule your interest must indemnify the tax payers from any tax liability in the final year of reversion.

As you can see this case is complex with regards to the U.S. income tax implications of cancellation-of-debt (COD) income that results from bankruptcy or insolvency, with a focus on the differences in the tax treatment for C corporations, S corporations, and partnerships as in the party who's EIN we are requesting. Since the general rule provides that COD income is recognized even though there are no actual cash proceeds, absent certain exclusions to the recognition of COD income that are discussed below, the tax liability on COD income could create liquidity issues for a debtor. Therefore, a thorough understanding of the statutory exclusion and deferral provisions is essential when it comes to tax planning to avoid or ameliorate the tax consequences associated with COD income.

Concerns are raised If a debtor has incurred net operating losses (NOLs), there may be certain alternative minimum tax limitations as well as other restrictions on the use of NOLs that may otherwise prevent the full use of those losses to offset COD income. However, that issue is beyond the scope of this item. Under Sec. 61(a)(12), which codified the landmark case of Kirby Lumber Co., 284 U.S. 1 (1931), gross income includes "income from discharge of indebtedness." This treatment is based on the rationale that since borrowing does not result in taxable income, the borrower realizes an economic benefit when the obligation is reduced or repayment is canceled. Indebtedness in this context is described in Sec. 108(d)(1) as "any indebtedness for which the taxpayer is liable, or subject to which the taxpayer holds property."

COD income can result from a variety of transactions involving the relief of a debt repayment obligation, such as action taken by the creditor (e.g., a formal discharge or repurchase of the debt for less than its principal amount) or by operation of law (e.g., debt discharge in bankruptcy). Interest—as well as principal—may constitute forgiven debt includible in income (see, e.g., Brooks, T.C. Memo. 2012-25; and Black, T.C. Memo. 2014-27). Realization of COD income generally occurs when it is clear that debt is undisputed, uncollectible, and non-revivable (see, e.g., Zarin, 916 F.2d 110 (3d Cir. 1990)). In the absence of actual payment or repurchase of the debt, the timing for realizing COD income is harder to pinpoint. While the courts have taken a fact-specific approach, the timing of COD income is generally tied to an identifiable event making it clear that the debt will never be paid (see, e.g., Cozzi, 88 T.C. 435 (1987)).

There is also a rebuttable presumption that an identifiable event occurred in a calendar year if the creditor has received no payments at any time during a testing period (generally 36 months) ending at the close of the year (Regs. Sec. 1.6050P-1(b)(2)(iv); see, e.g., Kleber, T.C. Memo. 2011-233). However, proposed regulations have been issued that, when finalized, will eliminate this rule. "Toll Charge" for Excluded COD Income

Sec. 108 lists certain exceptions to the general rule of including COD income in the taxpayer's gross income under Sec. 61(a)(12). However, a toll charge must be paid for income exclusion, in the form of a corresponding reduction of certain favorable tax attributes, including NOLs and the adjusted tax basis of property, according to the complex attribute reduction rules in Secs. 108(b) and 1017.



ASSOCIATION OF CERTIFIED FRAUD EXAMINERS
2015 MEMBER ACFE IN GOOD STANDING

Generally, tax attributes are reduced in the following order: NOLs, unused general business credits, minimum tax credits, net capital losses, basis, passive activity losses and credits, and foreign tax credits (Regs. Sec. 1.108-7(a)(1)). The taxpayer is allowed to take into account for the year of discharge the tax attributes that are carryovers to that year, before the attributes are reduced in the immediately succeeding year (Regs. Sec. 1.108-7(b)). A provision in Sec. 108(b)(5) allows a taxpayer to elect to first reduce the basis of its depreciable property as an alternative to the general ordering rule for attribute reduction. Where the excluded COD income exceeds the sum of the taxpayer's tax attributes, the excess is permanently excluded from the taxpayer's gross income.

Any taxpayer that excludes discharged debt from gross income must report the exclusion and related adjustments to tax attributes on Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment), to be filed with the income tax return for the tax year of the discharge.

COD Income in Consolidated Returns

For consolidated returns, each subsidiary you represent generally stands on its own in applying the COD rules discussed above. The amount of COD income excluded from gross income when the debtor is insolvent is determined based on the assets and liabilities of only the member that has COD income (Regs. Sec. 1.1502-28(a)(1)).

The regulations use a consolidated approach that reduces all tax attributes available to the debtor (Regs. Sec. 1.1502-28(a)(2)). Thus, the rules provide for a reduction of the consolidated NOLs as well as all other consolidated tax attributes (including those attributable to members other than the debtor-member). Items attributable to the debtor-member include the debtor-member's (1) consolidated attributes, (2) attributes that arose in separate return limitation years (SRLYs), and (3) basis of property.

You have failed to address how each consolidated attribute for the debtor-member is determined under Regs. Sec. 1.1502-21(b)(2)(iv). If the excluded COD income exceeds the attributes of the debtor-member, the reduction of consolidated attributes of other members and attributes of members other than the debtor-member that arose (or are treated as arising) in a SRLY is required to the extent that the debtor-member is a member of the SRLY subgroup for the attribute.

Tax attributes subject to reduction include tax attributes of other members that arise in a SRLY and that are not subject to a SRLY limitation (Regs. Sec. 1.1502-28(a)(4)). Those include, for example, attributes from SRLYs that are not subject to the SRLY limitations as a result of the overlap rule of Regs. Sec. 1.1502-15(g) or Regs. Sec. 1.1502-21(g). Unlike consolidated attributes, the basis of assets held by members other than the debtor-member is not an attribute that is directly available to offset income of the debtor-member. THE BASIS OF ASSETS HELD BY MEMBERS other than the debtor-member may never give rise to an attribute that could be directly available to offset income of a member of the

group for a consolidated return year. <u>Therefore, a reduction of the basis of assets of members other than the debtor-member is allowed only in limited circumstances.</u>

A look through rule applies if the attribute of the debtor-member to be reduced is the basis of stock of another member of the group (Regs. Sec. 1.1502-28(a)(3)). In these cases, corresponding adjustments must be made to the attributes of the lower-tier member. To make these adjustments, the lower-tier member is treated as a debtor-member that has COD income excluded from gross income in the amount of the stock basis reduction for purposes of the rules relating to the reduction of the attributes of a debtor-member. The consolidated attributes of the lower-tier member (determined by Regs. Sec. 1.1502-21(b)) and the lower-tier member's separate attributes (including attributes that arose in SRLYs and asset basis) are available for reduction.

While the above rules apply to outside creditor relationships, special rules apply to intercompany obligations. Regs. Sec. 1.1502-13(g)(4)(i)(C) provides that Sec. 108(a) does not apply to income from an intercompany obligation. Therefore, COD income of a member must be included in the gross income of the member realizing the income, with a corresponding bad debt expense deduction to the other member. While the income and bad debt expense offset each other at the federal consolidated return level, there could be taxable COD income for those stand-alone companies that do not file a combined or consolidated return and that do not have specific adjustments to eliminate the COD income at the state level.

Finally, can you please address CODE OF CIVIL PROCEDURE SECTION 697.510-697.670 concerning 697.510. Where title transferred on a deferred tax aversion scheme then the (a) A judgment lien on personal property described in Section 697.530 is created by filing a notice of judgment lien in the office of the Secretary of State pursuant to this article. A judgment lien may be created under this article only if the judgments a money judgment that was first entered in this state after June30, 1983. Except as provided in subdivision (b) of Section 697.540, A JUDGMENT LIEN MAY NOT BE CREATED UNDER THIS ARTICLE IF THE MONEY JUDGMENT IS PAYABLE IN INSTALLMENTS UNLESS ALL OF THE INSTALLMENTS
under the judgment have become due and payable at the time the notice of judgment lien is filed.
Can you state for the court your response here?

In other words, except as otherwise provided in subdivision (c), (e), or (g), the judgment lien continues for five years from the date of filing. As such the provisions in (c) are essential to the case pleaded in determining the valid nature of any filed judgment lien within five years that also lapses on the expiration of the period described in subdivision (b) unless, before the lapse, a continuation statement is filed pursuant to subdivision. Note in California under sub sec (d). Upon lapse, the judgment lien created by the filing of a notice pursuant to subdivision (a) ceases to be effective.   <u>(d) A continuation statement may be filed only within the six-month period prior to the expiration of the five-year period specified in subdivision (b).</u>[1]

---

[1]  (e) A continuation statement that is not filed within the six-month period prescribed by subdivision (d) is ineffective. Upon timely filing of a continuation statement, the effectiveness of the initial notice of judgment lien continues for a period of five years commencing on the day on which the notice of judgment lien would have become ineffective in the absence of the filing. Upon the expiration of the five-year period, the notice of judgment



ASSOCIATION OF CERTIFIED FRAUD EXAMINERS
2015 MEMBER ACFE IN GOOD STANDING

There is no method or means to align the defendant's discovery with anything meaningful or of particularly substantive value POST Sale. In other words, the foreclosing attorneys are purporting to maintain the proper state operating practices and procedure in the recovery of title under a contract limiting the state to recording purposes only. My concern here once again arises from foreclosing agent's failure to identify the MIDDLE MAN or NOMINEE he represents as issuing party for the tax payer 1099 A The household obviously did not abandon here interest and consideration thus creating a taxable event. See Section 61 (a) (1) of the US Code 26 including § 108 (1). The matter is with respect to the courts acceptance of the assignees cancellation of debt and involuntary conversion of income. In other words, the mortgage was converted to equity from 12 months into the origination of upon which the debt owed by the consumer was tendered in exchange for shares issued to the demand issuer. that was paid to affiliates under a mergers and acquisition scheme. The courts are obviously not impressed with the subtleties of divestiture of collateral where the equitable shares issued for demand satisfied your obligation and your debt was converted to the cost of financing the equitable shares issued to demand holder CWHL Inc. Therefore, someone must file Form 1099-A if the property is totally or partly held for use in a trade or business or for investment. Look the beneficial interest is a middle man /broker or nominee for a trustee representing you as a holder for the demands value. Therefore, I request the following for preparing the ledger analysis for your tax preparer and your objectives for post-sale tax planning.

[1] Value of the shares you financed secured in trust FBO BRAESHERE under trustee for certain Grantor trust assets.
[2] Amount shares were sold for at trustee sale
[3] Margin or profit that your entitled to receive by end of 30 days.

Ill assume you're entitled to a profit if the foreclosing attorneys have affirmed they represented the interests of the nominee or middleman and there is no 1099 A for abandonment. We need for the lawyer to identify the nominee or middleman. If the property was abandoned the attorney representing the Trustee at time of the sale / recovery is obligated to revel such tax payer information.

At time of sale the Regulations (REG-136676-13) were issued concerning the 36-month non-payment testing period. In addition to these specific instructions, you should also request the information your entitled to according to the IRS under 2016 General Instructions for Certain Information Returns. According to the Service, those general instructions include the following important topics.

The issuer who must file the 1099 A as nominee/middleman. 2. When and where to file. 3. Electronic reporting requirements. 4. Corrected and void returns. 5. Statements to

---

lien lapses in the same manner as provided in subdivision (c), unless, before the lapse, another continuation statement is filed pursuant to subdivision (d).
Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the initial notice of judgment lien.

Page **7** of **8**

recipients. 6. Taxpayer identification numbers. 7. Backup withholding. 8. Penalties. 9. Other general topics. in

      Please request from him the name of the party holding the shares in your name or for your estate and their value at time of sale if the shares were in fact NOT ABANDONED NOR CANCELLED as the IRS will allege.

      Respectfully


Maher Soliman
Accountant